UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 2:19-mj-<sup>248</sup>-JHR |
| v. | ) | |
| | ) | 18 U.S.C. § 1951(a) |
| ERIC MERCADO | ) | |
| STEVEN HARDY | ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Kyle A. Kassa, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I am a 2004 graduate of the Maine Criminal Justice Academy's 7th Basic Law Enforcement Program and am employed as a Deputy Sheriff with the York County Sheriff's Office (Maine), and have been since November of 2005. Prior to that I was employed as a Patrolman with the Buxton Police Department. I am currently a Task Force Officer (TFO) assigned full time to the Federal Bureau of Investigation's Safe Streets Gang Task Force.

2. In the course of my law enforcement training and experience, I have had an opportunity to search for, seize, and personally observe what I have recognized to be and what was later confirmed by drug analysis to be schedule drugs, including but not limited to heroin, fentanyl, methamphetamine, cocaine, marijuana (both dried and growing), crack cocaine, and various narcotics lawfully available only by prescription. I have conducted or participated in, among other things, surveillance, undercover transactions, debriefings of informants and confidential sources, and reviews of taped conversations relating to narcotics trafficking. I have assisted in many other investigations, both state and federal, to include investigations of crimes

1

of violence. I have drafted numerous search and arrest warrants and have assisted in the execution of numerous search and arrest warrants.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

## Facts Supporting Probable Cause

4. During the evening hours of May 10, 2019, Eric Mercado, Steven Hardy and others traveled from outside of Maine to York, Maine, in order to commit an armed home invasion robbery. The target of the robbery was R.S., a person known to be involved in the cultivation and/or distribution of marijuana. The goal of the robbery was to obtain marijuana and the proceeds of marijuana sales.

5. Once they arrived at the residence in York, several co-conspirators and R.S. consumed alcohol and entered a hot tub. Shortly after they entered the hot tub, Mercado and Hardy wearing masks entered the residence. Mercado was armed with a shotgun and Hardy was armed with a pistol. The robbers ordered R.S. into a bathroom. R.S. refused and attempted to flee the residence. A struggle ensued and Mercado and Hardy each discharged their firearm. R.S. ultimately fled.

6. Law enforcement responded to the residence following a 911 call. A law enforcement officer located a handgun lying in the driveway approximately 25 feet from the entrance to the garage. Officers also observed numerous security cameras around the exterior of the residence with wires leading into the residence.

7. Law enforcement officers interviewed R.S. during the early morning hours of May 11, 2019. It was apparent to interviewing officers that R.S. was intoxicated. In summary and in part, R.S. stated the following:

   a. Earlier in the day, he received a call from Defendant Nathaniel Rivera;

   b. Rivera said he was with two girls and asked R.S. if he wanted to have him come over and party;

   c. Rivera and the females arrived at the residence in a dark colored sedan that same evening;

   d. All four individuals consumed alcohol and ultimately ended up in the hot tub;

   e. While they were in the hot tub, two masked men entered the residence;

   f. One man was armed with a shotgun and the other was armed with a handgun;

   g. The man with the shotgun ordered R.S. into a bathroom;

   h. R.S. refused and attempted to flee;

   i. R.S. then sustained a gunshot wound in the foot;

   j. The man confronted R.S. and told him that others were waiting outside and would kill R.S. if he did not pay a debt;

   k. R.S. then grabbed a liquor bottle, hit the man with the shotgun, and ran to a neighbor's house;

   l. While at the neighbor's house, R.S. observed two vehicles leave the residence – a dark colored sedan and a vehicle R.S. identified as his truck.

8. The following morning, a truck belonging to R.S. was located about a third of a mile from the residence.

9. Law enforcement obtained a state search warrant for the residence. During the search, law enforcement officers made observations, including the following:

   a. Two shotgun shells were found inside the house;

   b. There was an apparent shotgun shot through the door leading to the hallway of the master bedroom and bathroom and an apparent shotgun shot in the floor of one of the entrance ways;

   c. Two 9mm shells were located under the kitchen table;

   d. There was a hole in a wall consistent with a bullet hole;

   e. A 9mm shell was located on the floor in the living room;

   f. There were broken alcohol bottles, broken glasses, and shattered glass and liquid on the floor consistent with a struggle;

   g. A pair of pants containing a wallet and Defendant's driver's license were found in a bedroom in the residence;

   h. There was equipment consistent with the cultivation of marijuana in the residence (through law enforcement did not locate any growing plants).

10. There were surveillance cameras installed at the residence. Law enforcement officers made observations, including the following, from the surveillance footage:

   a. A dark colored vehicle arrived at the residence on May 10, 2019, at approximately 10:49 p.m.;

   b. One male and two females got out of this car and walked towards the house;

c. At approximately 1:16 a.m. on May 11, 2019, two masked men walked towards the front door. One man was carrying what appears to be a shotgun and the other was carrying what appears to be a black handgun;

d. At approximately 1:18 a.m., both gunmen pointed guns at the people in the hot tub and gave commands;

e. At approximately 1:18 a.m., the gunmen forced R.S. out of the hot tub and demanded he get face down on the ground. R.S. refused;

f. At approximately 1:25 a.m., people can be heard arguing before a gunshot went off;

g. A male (believed to be R.S.) is then seen running out of the garage area and into the driveway;

h. A gunshot is then heard and the muzzle flash is visible on the recording.

11. One of the co-conspirators (hereinafter CD-1) who had been in the hot tub with R.S. has been interviewed by law enforcement. , CD-1 has also told me the following:

a. CD-1 identified the armed robbers as Eric Mercado and Steven Hardy and that CD-1, Mercado, Hardy and others had met days before the robbery to plan out the robbery.

b. Eric Mercado is a longtime friend with a history of committing robberies.

c. Eric Mercado is a drug dealer and was dealing with financial problems after losing cocaine worth thousands of dollars.

d. One of the females who was in the hot tub has an appearance consistent with the appearance of Rhiannon Mercado – Eric Mercado's wife.

e. At the residence, CD-1 observed Eric Mercado armed with a shotgun and Hardy

5

armed with a handgun. CD-1 observed both men fire shots during the robbery.

f.	CD-1 expected the proceeds of the robbery would be between $100,000 and $200,000.

g.	Eric Mercado and Hardy used "burner phones" during the robbery.

12.	I have received and reviewed stored text message communications associated with telephone number (978) 708-6668 (CD-1's telephone number) that were produced by Verizon Wireless pursuant to a search warrant. Through this review, I observed the following:

a.	In the days leading up to the robbery, CD-1 communicated with AT&T phone number (978) 387-7357, which is a number I believe is used by Mercado. CD-1 stated that this is Eric Mercado's phone number. The content of these text messages reveal that the user of this phone number is planning the robbery along with CD-1. In the following text message exchange, the text message content in red is an outgoing message from CD-1 to (978) 387-7357; black font is incoming to CD-1 from the same number. This text message exchange is consistent with CD-1's interview statements where he stated that Mercado pressed CD-1 to continue plans to commit the robbery due to his own financial setbacks.

| 05/08/2019 @ 00:35:59 | (978) 387-7357 | This is a go TONIGHT |
| 05/08/2019 @ 00:37:19 | (978) 387-7357 | Why tonight ? |
| 05/08/2019 @ 00:37:24 | (978) 387-7357 | I was hoping to do it tomorrow |
| 05/08/2019 @ 00:37:32 | (978) 387-7357 | Is there a specific reason |
| 05/08/2019 @ 00:37:56 | (978) 387-7357 | Cuz can u please.jist wait till tomorrow |
| 05/08/2019 @ 00:37:56 | (978) 387-7357 | Because I'm dead FUCKKNG broke and was rich a week ago |

b.	The day prior to the robbery, the user of (978) 387-7357 confirms plans for the robbery to take place on Friday night, May 10, 2019.

6

| | | |
|---|---|---|
| 05/09/2019 @ 15:02:26 | (978) 387-7357 | Are you still down for Maine |
| 05/09/2019 @ 15:02:30 | (978) 387-7357 | Nah we doing Maine on Friday right |
| 05/09/2019 @ 15:02:36 | (978) 387-7357 | I was talking to him last night |
| 05/09/2019 @ 15:02:42 | (978) 387-7357 | He sent me a pic of his house |
| 05/09/2019 @ 15:02:51 | (978) 387-7357 | Friday night is tomorrow |
| 05/09/2019 @ 15:03:09 | (978) 387-7357 | I know |

        c.       In the hours leading up to the robbery, the user of (978) 387-7357 is again pressing for the robbery to take place. The user states that everything is planned out and intends to go over the complete details with CD-1.

| | | |
|---|---|---|
| 05/10/2019 @ 17:35:54 | (978) 387-7357 | Yo we doing this I need to know cuz |
| 05/10/2019 @ 17:36:32 | (978) 387-7357 | I got everything planned just need to go over EVERYHTJBG with you |
| 05/10/2019 @ 18:15:45 | (978) 387-7357 | Cuz you worrying me man |
| 05/10/2019 @ 18:15:48 | (978) 387-7357 | What's going inb |
| 05/10/2019 @ 18:15:51 | (978) 387-7357 | On ? |

        d.       The content of text messages that continue between CD-1 and (978) 387-7357 indicate that the two met several hours prior to the robbery. Following the pair meeting, text messages between (978) 387-7357 appear to cease with the exception of only two messages the following day.

        e.       Just prior to the robbery, and after CD-1's arrival at RS's residence, CD-1 begins communicating with a new phone number. CD-1 had no prior communication with this phone number, and with the exception of two text messages, only communicates with this phone number during the robbery. In this exchange, CD-1 (in red) provides the user of the T-Mobile (978) 876-0926 with RS's address, and gives updates on the situation.

| | | |
|---|---|---|
| 05/11/2019 @ 01:05:39 | (978) 876-0926 | 3 rowefalls In York, me |
| 05/11/2019 @ 02:02:04 | (978) 876-0926 | Yo don't go to the warehouse without me |
| 05/11/2019 @ 02:02:47 | (978) 876-0926 | Obviously |
| 05/11/2019 @ 03:20:44 | (978) 876-0926 | His business is legal pulling 800k each room there's 4 there with a store front |
| 05/11/2019 @ 04:28:29 | (978) 876-0926 | What you think $ |
| 05/11/2019 @ 04:37:45 | (978) 876-0926 | Yeah give it a few minutes |
| 05/11/2019 @ 04:37:59 | (978) 876-0926 | Putting the dogs away again |
| 05/11/2019 @ 04:39:34 | (978) 876-0926 | I'll t xt u jumping in the hot tub now |
| 05/11/2019 @ 04:42:01 | (978) 876-0926 | I'm just guessing if he has money here |
| 05/11/2019 @ 04:42:50 | (978) 876-0926 | His business is legal I guess but not all of it not the back door shitb |

f. In the below exchange, CD-1 (in red) gives the user of (978) 876-0926 the order to initiate the robbery, "Now."

| | | |
|---|---|---|
| 05/11/2019 @ 04:48:17 | (978) 876-0926 | Be ready |
| 05/11/2019 @ 04:48:21 | (978) 876-0926 | I'll tell u |
| 05/11/2019 @ 04:52:25 | (978) 876-0926 | Is there a coor open ? |
| 05/11/2019 @ 04:52:39 | (978) 876-0926 | Or the one I vsm see you from |
| 05/11/2019 @ 05:08:30 | (978) 876-0926 | Yes |
| 05/11/2019 @ 05:08:51 | (978) 876-0926 | 5 min walk in go through the right my feet print |
| 05/11/2019 @ 05:10:46 | (978) 876-0926 | In hack or front |
| 05/11/2019 @ 05:14:51 | (978) 876-0926 | What door |
| 05/11/2019 @ 05:15:26 | (978) 876-0926 | Back? |
| 05/11/2019 @ 05:15:50 | (978) 876-0926 | Front |
| 05/11/2019 @ 05:15:54 | (978) 876-0926 | Niq |
| 05/11/2019 @ 05:15:58 | (978) 876-0926 | Now |

12. Subscriber information for (978) 387-7357 revealed that Carmen Mercado is the subscriber of this number. Based on Eric Mercado's criminal history record, I believe Carmen Mercado is Eric Mercado's mother.

## Conclusion

14. ~~13.~~ Based on the above, I respectfully request that the Court issue a criminal complaint charging Eric Mercado and Steven Hardy with the offense of conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a).

_____
Kyle Kassa
Task Force Officer, FBI

Sworn to and subscribed before me on this 3rd day of August, 2019.

_____
John H. Rich III
United States Magistrate Judge